1999 UT App 119

**David WINTERS, Plaintiff and Appellant,**

v.

**Joanne SCHULMAN and Allison Abizaid, Defendants and Appellee.**

No. 980242–CA.

Court of Appeals of Utah.

April 15, 1999.

W. Kevin Jackson, Salt Lake City, for Appellant.

David C. Wright and Ellen Maycock, Salt Lake City, for Appellee.

Before WILKINS, P.J., GREENWOOD, Associate P.J., and ORME, J.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Appellant, David Winters (Winters) appeals the trial court's grant of summary judgment in favor of Joanne Schulman (Schulman). The trial court ruled that Winters's wrongful lien claim was moot and that his abuse of process and negligence claims against Schulman failed as a matter of law. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 The following facts are undisputed. Winters and his wife Allison Abizaid (Abizaid) divorced in California in 1989. In 1990, Winters purchased a piece of property located in Sandy, Utah. Originally, the names of both Winters and Abizaid appeared on the title to the Utah property; however, in 1992, Abizaid quit-claimed her interest in the Utah property to Winters pursuant to an agreement in which he agreed to refinance the Utah property and pay Abizaid amounts owing under the California divorce decree.

¶ 3 In May 1995, Abizaid retained the services of Schulman, a licensed California attorney, to enforce the terms of the California decree of divorce. After consultation with Abizaid, Schulman filed a lis pendens on Winters's Utah property. The lis pendens was signed by Abizaid and recorded in the Salt Lake County Recorder's office on May 30, 1995. The lis pendens stated that a divorce action was pending between Abizaid and Winters in California and that the action might affect title to or possession of the Utah property. Nothing in fact, was pending in the California divorce action at the time the lis pendens was recorded.

¶ 4 Some *five months later*, in October 1995, Schulman filed a post-divorce enforcement action with the California court requesting attorney fees, sanctions, determination of amounts still due Abizaid under the 1989 divorce decree, and enforcement of its terms. Winters sent two letters to Schulman in October 1995, claiming the lis pendens was illegal under Utah law and demanding that it be released immediately. However, the lis pendens remained on the Utah property and in December 1995, Winters filed a complaint in Utah naming Schulman and Abizaid as co-defendants. The complaint sought the immediate removal of the lis pendens from the Utah property and requested damages for filing a wrongful lien. The complaint also alleged that Schulman's act of filing what Winters considered to be a baseless lien constituted an abuse of process and gross negligence. Because of the potential conflict of interest created by the Utah suit, Schulman withdrew as counsel for Abizaid in the California proceedings on January 10, 1996.

¶ 5 On April 19, 1996, the California court, after hearing Winters's and Abizaid's arguments, ordered an immediate release of the lis pendens, but placed a restraining order on Winters regarding the Utah property and continued the hearing until May 1996. Four days later, Winters filed a motion with the Utah trial court requesting an order releasing the lis pendens on the Utah property. On May 6, 1996, Abizaid instructed her attorney to release the lis pendens.

¶ 6 At the California hearing which resumed on May 31, 1996, an agreement was reached between Winters and Abizaid concerning Abizaid's October 1995 post-divorce

enforcement action. As part of the settlement, the California court vacated the restraining order on Winters regarding the Utah property and ordered that a $10,000 payment Winters owed to Abizaid under the California divorce decree be secured by a deed of trust on the Utah property. The settlement also released Abizaid from any further liability in this case.

¶ 7 Winters filed a motion for partial summary judgment with the Utah trial court alleging that the lis pendens filed by Schulman was a wrongful lien and that Schulman's actions constituted an abuse of process as well as gross negligence. Schulman filed a cross-motion for summary judgment refuting Winters's claims. The trial court entered an order denying Winters's motion for summary judgment and granting Schulman's cross-motion for summary judgment. The trial court ruled that Winters's wrongful lien claim became moot after the California court ordered the release of the lis pendens and issued a restraining order on Winters regarding the Utah property. The trial court also determined that Winters's negligence claim failed as a matter of law because Schulman owed no duty to Winters. Finally, the trial court concluded that Winters failed to establish the necessary elements to support an abuse of process claim. Winters appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 8 On appeal, Winters challenges three legal conclusions of the trial court: (1) that Winters's claim for a wrongful lien was moot; (2) that Schulman owed no duty of care to Winters capable of supporting a negligence claim; and (3) that Winters failed to establish the requisite elements to support an abuse of process claim.

¶ 9 Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Drysdale v. Ford Motor Co.*, 947 P.2d 678, 680 (Utah 1997). In addition, "we view the facts and inferences in the light most favorable to the non-moving party."

*Krantz v. Holt*, 819 P.2d 352, 353 (Utah 1991). "Because a challenge to summary judgment presents for review only questions of law, we accord no deference to the trial court's conclusions but review them for correctness." *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 256 (Utah 1994).

## ANALYSIS

### 1. Wrongful Lien Claim

¶ 10 We begin by addressing the threshold issue of whether Winters's wrongful lien claim is moot or barred by principles of collateral estoppel.

### A. Mootness

¶ 11 This court has stated that an issue only becomes "moot when 'the requested judicial relief cannot affect the rights of the litigants.'" *Bennion v. Sundance Dev. Corp.*, 897 P.2d 1232, 1234 (Utah Ct.App. 1995) (quoting *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (additional citations omitted)). In this case, Schulman argued below, and the trial court agreed, that because the California court had released the lis pendens and entered a restraining order, this claim was moot. We disagree. The release of the lis pendens and issuance of a restraining order in no way affected Winters's ability to file a wrongful lien claim under Utah law. *See* Utah Code Ann. §§ 38–9–1 to –4 (1995) (repealed 1997).[1] At the time Winters filed his initial complaint section 38–9–1 provided that

[a] person who claims an ... encumbrance against, real property, ... who knows or has reason to know that the document is ... groundless, ... is liable to the owner ... for $1,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees, and costs ... if he willfully refuses to release or correct such document of record within 20 days from the date of written request from the owner. . . .

---

1. In this case, we apply the 1995 version of sections 38–9–1 to –4 because that was the law in effect at the date Winters filed his original complaint. *See State v. Shipler*, 869 P.2d 968, 970 (Utah Ct.App.1994) (stating general rule followed in Utah is that "the substantive law to be applied throughout an action is the law in effect at the date the action was initiated") (emphasis omitted).

Utah Code Ann. § 38–9–1 (1995) (repealed 1997). The statute's plain language clearly allows one whose property has been wrongfully encumbered to recover if such encumbrance is not removed within twenty days from the day the owner requests its removal. *See Brendle v. City of Draper*, 937 P.2d 1044, 1047 (Utah Ct.App.1997) (stating we construe a statute according to its ordinary and accepted meaning). The statute makes no mention whatsoever that recovery is barred if the encumbrance has been removed, even if "replaced" by a non-wrongful encumbrance or, in this case, a restraining order. Because Winters may request relief under section 38–9–1 for the alleged wrongful lien on his property, a request that, if granted, will affect both his and Schulman's legal rights, this claim is not moot.

### B. Collateral Estoppel

■ ¶ 12 We next address Schulman's contention that because the California court ordered the release of the lis pendens and denied Winters's request for attorney fees incurred in pursuing that claim, any wrongful lien claim has already been litigated and is barred by collateral estoppel. We disagree.

¶ 13 Collateral estoppel "does not apply to issues that merely 'could have been tried' in the prior case, but operates only to [bar] issues which were actually asserted and tried in that case." *International Resources v. Dunfield*, 599 P.2d 515, 517 (Utah 1979); *accord Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 254 n. 6 (Utah Ct.App.1993) (same). Although the California court ordered the lis pendens released, it did not specifically address Winters's contention that the lis pendens filed by Schulman was wrongful in that it did not comply with section 78–40–2. *See* Utah Code Ann. § 78–40–2 (1996). Also, the California court did not consider Winters's claim for damages under sections 38–9–1 to –4 for Schulman filing an allegedly wrongful lien in Utah. Thus, we conclude that Winters's wrongful lien claim was not precluded by principles of collateral estoppel. Additionally, because the issue of attorney fees, as it relates to the wrongful lien claim under sections 38–9–1 to—4, was not litigated in the California proceeding, collateral estoppel does not preclude consideration of this issue either.

### C. Location of Pending Action and Place of Filing

¶ 14 Because we have determined that Winters's wrongful lien claim is neither moot nor barred by principles of collateral estoppel, we next address the merits of Winters's wrongful lien claim. Winters asserts the lis pendens filed by Schulman is invalid under Utah law because it relates to a California divorce action. More specifically, Winters argues that in Utah, a lis pendens may only be filed in conjunction with an action pending before a Utah court. We disagree.

■ ¶ 15 Our lis pendens statute provides that "[i]n any action affecting ... real property the plaintiff at the time of filing the complaint or thereafter ... may file for record with the recorder of the county in which the property or some part thereof is situated a notice of the pendency of the action...." Utah Code Ann. § 78–40–2 (1996). "The recording of a lis pendens serves as a warning to all persons that any rights or interests they may acquire in the interim are subject to the judgment or decree." *Bagnall v. Suburbia Land Co.*, 579 P.2d 914, 916 (Utah 1978). Thus, the primary purpose of section 78–40–2 is to provide prospective purchasers with notice of litigation affecting title to or possession of property located in Utah.

■ ¶ 16 Typically, a lis pendens recorded in Utah will be filed in conjunction with an action pending before a court of this state. The difficulty in this case arises because the lis pendens was filed in Utah but the divorce action had been commenced in California. Therefore, the first question before us is whether, under section 78–40–2, a lis pendens may be filed in Utah when an action has been brought in another state. Under section 78–40–2, the prospective purchaser need only look in the office of the recorder of the county in which the property is situated to determine if there is any pending litigation affecting the land. The purpose of the lis pendens statute, that of providing notice to prospective purchasers, is not undermined by applying section 78–40–2 to out-of-state judicial proceedings. Quite the contrary.

■ ¶ 17 Greater protection is afforded potential purchasers by the filing of accurate

and appropriate lis pendens regarding actions brought even in other jurisdictions. We also recognize that it may be more difficult for prospective purchasers of real property in Utah to determine the status or validity of an action in a court outside this state. However, any inconvenience caused prospective purchasers by the filing of a lis pendens is outweighed by the added protection afforded them. Allowing a lis pendens to be filed in Utah when the action is pending in another state actually provides prospective purchasers of real property in Utah with more protection than if a lis pendens could only be filed in connection with an action commenced in Utah. Applying section 78–40–2 to out-of-state judicial proceedings provides prospective purchasers with notice of *all* actions that may affect the property, not just those pending in Utah. Therefore, we hold that the lis pendens filed by Schulman in Utah is not invalidated by the fact that it relates to a California divorce action. We note that although we have found little authority on this issue, our decision comports with other jurisdictions that have addressed this question. *See, e.g., Belleville State Bank v. Steele,* 117 Wis.2d 563, 345 N.W.2d 405, 406 (1984) (holding lis pendens filed in Wisconsin relating to divorce action pending in Illinois valid under Wisconsin's lis pendens statute).

### D. Validity of Lis Pendens

¶ 18 The foregoing conclusion, however, is not dispositive. We must next determine whether the lis pendens filed in this instance meets the statutory requirements of section 78–40–2. Winters argues that Schulman's lis pendens was invalid under section 78–40–2 because there was no action pending when Schulman filed the lis pendens and because Schulman's claim did not seek title to or possession of the Utah property. We agree on both counts.

¶ 19 Section 78–40–2 provides that "[i]n any action *affecting title to, or the right of possession of,* real property the plaintiff *at the time of filing the complaint or thereafter,* ... may file ... *a notice of the pendency of the action* ...." Utah Code Ann. § 78–40–2 (1996) (emphasis added). "In determining the validity of a lis pendens, courts have generally restricted their review to the face of the complaint." *S. Utsunomiya Enters.*

*Inc. v. Moomuku Country Club,* 75 Haw. 480, 866 P.2d 951, 964 (1994). Here, the lis pendens filed in 1995 asserted that the 1988 divorce action between Winters and Abizaid was pending in California and that it affected title to or possession of the Utah property. However, the California court had issued its final divorce decree in May 1989, and the Utah real property was not addressed in the complaint or in the divorce decree.

¶ 20 Because the California divorce proceeding had been resolved by a final order seven years before, the California action was not a pending action at the time the lis pendens was filed. *See Hase v. Hase,* 775 P.2d 943, 945 (Utah Ct.App.1989) (stating divorce decree that disposes of all claims between parties constitutes final order). Although Schulman filed an enforcement action subsequent to the entry of the final divorce decree, this filing occurred five months after the lis pendens was recorded in Utah. The Utah Supreme Court has stated that in order to comply with section 78–40–2, a legal action must exist at the time the lis pendens is recorded. *See Hansen v. Kohler,* 550 P.2d 186, 190 (Utah 1976) (concluding lis pendens's "only foundation is the action filed—it has no existence independent of it"); *see generally Birch v. Fuller,* 9 Utah 2d 79, 337 P.2d 964 (1959) (determining when no legal action was filed, the recordation of lis pendens was not in accordance with law). Because there was no action *pending* at the time Schulman filed the lis pendens, we conclude the lis pendens was invalid under section 78–40–2.

¶ 21 The lis pendens was also invalid because the complaint and decree failed to address title to or possession of the Utah real property as required under section 78–40–2. In Utah, a lis pendens may only be filed in connection with an action (1) "affecting the title" to real property, or (2) "affecting ... the right of possession of[ ] real property[.]" Utah Code Ann. § 78–40–2. In this case, the Utah property was not even purchased until after the California court issued the final divorce decree. Thus, the California divorce action could not have affected title to, or possession of, the Utah property.

¶ 22 Even in the post-divorce enforcement proceeding, Schulman only requested that the court "determine the amount due by [Winters] under the [1989 divorce decree] as $62,352, plus legal interest, and ... order a lien against [Winters's] real property in Utah until said sum, plus any attorney fees and sanctions, are paid in full." This claim sought enforcement of a monetary award pursuant to a divorce decree. It was unrelated to title or possession of the Utah property, and Schulman's gratuitous request that payment be encouraged by creating a lien on the Utah property does not change the claim's fundamental character. Furthermore, "Utah law does not allow for the filing of a lis pendens in cases seeking a money judgment." *Busch v. Doyle,* 141 B.R. 432, 436 (Bankr.D.Utah 1992); *see also Hamilton v. Smith,* 808 F.2d 36, 37 (10th Cir.1986) (stating section 78–40–2 prohibits filing of lis pendens in anticipation of money judgment). Thus, we conclude the filing of a lis pendens, when no pending action affecting title to or possession of Utah property exists at the date of filing the lis pendens is invalid under section 78–40–2.

### E. Liability of Schulman

¶ 23 Although we have determined that the lis pendens filed by Schulman was invalid under section 78–40–2, this determination is not dispositive of whether Winters is entitled to recover for Schulman's filing of the wrongful lien. The version of section 38–9–1 applicable to this case provided that a party may recover *"$1,000 or treble actual damages,* whichever is greater, *and for reasonable attorney fees "* if the person who filed the wrongful lien, "knows or has reason to know that the document is forged, *ground-*

*less,* or contains a material misstatement or false claim...." Utah Code Ann. § 38–9–1 (1995) (repealed 1997) (emphasis added).[2] In addition, section 38–9–2 provided that "[a] document purporting to claim an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment, or other specific legal authority *is presumed to be groundless and invalid."* Utah Code Ann. § 38–9–2 (1995) (repealed 1997) (emphasis added).[3] Schulman, as a licensed attorney, must be expected to review Utah law or consult with a Utah attorney before filing a lis pendens in this state. Had she done so, as a matter of law Schulman would have known that under Utah law a lis pendens cannot be filed when there does not then exist a pending action affecting title to or possession of the property. Because we have determined that Schulman should have known the lis pendens was invalid under section 78–40–2, we conclude that it was groundless as a matter of law. Accordingly, we remand to the trial court for further proceedings consistent with this opinion to determine the amount of damages and attorney fees Winters is entitled to under sections 38–9–1 to –4.

### 2. Negligence Claim

¶ 24 Winters next claims the trial court erred in ruling that Winters's negligence claim failed as a matter of law because Schulman owed no duty of care to Winters. The Utah Supreme Court has stated that "[a]n essential element of a negligence claim" is establishing the defendant owed the plaintiff a duty of care. *Owens v. Garfield,* 784 P.2d 1187, 1189 (Utah 1989). In fact, without a showing of duty, a plaintiff cannot recover.

---

**2.** The present law provides that

(1) A lien claimant who records or files or causes a wrongful lien ... to be recorded or filed ... is liable to a record interest holder for any actual damages proximately caused by the wrongful lien.

(2) If the person in violation of this Subsection (1) refuses to release or correct the wrongful lien within 20 days from the date of written request ... the person is liable to that record interest holder for $1,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs.

(3) A person is liable to the record owner of real property for $3,000 or for treble actual

damages, whichever is greater, and for reasonable attorney fees and costs, who records or files or causes to be recorded or filed a wrongful lien ... knowing or having reason to know that the document:

(a) is a wrongful lien;

(b) is groundless; or

(c) contains a material misstatement or false claim.

Utah Code Ann. § 38–9–4 (1997).

**3.** We note that in contrast to section 38–9–2, the current law no longer presumes that a lien not authorized by statute is groundless. *See* Utah Code Ann. § 38–9–7 (1997).

*See Rollins v. Petersen,* 813 P.2d 1156, 1159 (Utah 1991). Thus, in order to prevail Winters must prove that Schulman owed him a duty of care. We conclude Winters cannot meet this burden.

¶ 25 In Utah it is well established "that the obligation of an attorney is to his [or her] client and not a third party." *Hughes v. Housley,* 599 P.2d 1250, 1254 (Utah 1979) (footnote omitted). Thus, an attorney will be held liable for negligence only to his or her client, and cannot, in the absence of special circumstances, be held liable to anyone else. In some instances the liability of an attorney to a third party may be recognized on the theory that the attorney's employment constituted a third-party beneficiary contract. *See Atkinson v. IHC Hosp. Inc.,* 798 P.2d 733, 735–36 (Utah 1990). The test for third party recovery is whether the parties clearly intended the third party to receive a benefit. *See Oxendine v. Overturf,* 361 Utah Adv. Rep. 23, 25, 973 P.2d 417 (Utah 1999) (recognizing statutory wrongful death beneficiary is intended beneficiary of attorney-client agreement between personal representative and attorney because personal representatives's attorney has fiduciary duty to represent interests of all statutory heirs).

¶ 26 Here, Schulman was Abizaid's attorney in an action against Winters. Abizaid's interests were in direct conflict with Winters's interests. Schulman, who had a contractual duty to represent Abizaid, owed no corresponding duty of care to Winters. Our supreme court has stated "[t]he basis of our judicial system is the adversarial model, a concept which is foreign to the placement of a duty upon counsel to represent the best interests of both sides." *Atkinson,* 798 P.2d at 736; *see also* Joan Teshima, Annotation, *Attorney's Liability, to One Other Than Immediate Client, for Negligence in Connection with Legal Duties,* 61 A.L.R.4th 615, 625 (1988) (stating "the overwhelming weight of authority holds that an attorney owes no legal duty to his clients' adversary the breach of which would support a negligence action"). Furthermore, the agreement between Schulman and Abizaid concerning legal representation was obviously not intended to benefit Winters. In light of the foregoing, we conclude the trial court was correct in concluding that Winters's negligence claim failed as a matter of law.

### 3. Abuse of Process Claim

¶ 27 Finally, Winters contends the trial court erred in dismissing his abuse of process claim against Schulman. Again, we disagree.

¶ 28 The Utah Supreme Court has recognized a civil cause of action for abuse of process where it is shown that a suit was "brought without probable cause, for the purpose of harassment or annoyance; and it is usually said to require malice." *Baird v. Intermountain Sch. Fed. Credit Union,* 555 P.2d 877, 878 (Utah 1976) (footnote omitted). Furthermore, an abuse of process claim requires that the prior "proceedings have terminated in favor of the person against whom they were brought." *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 959 (Utah Ct.App. 1989); *see also Baird,* 555 P.2d at 878 (stating prerequisite to abuse of process claim is "a showing ... that the prior suit terminated in favor of the defendant therein").

¶ 29 In this case, however, Winters was not a successful defendant in a prior proceeding. Instead, Winters was a respondent in a California enforcement action that ultimately ended in a settlement between the parties. Without this foundational element, Winters's abuse of process claim fails as a matter of law. Accordingly, we affirm the trial court's decision on this ground.

### CONCLUSION

¶ 30 We conclude the trial court erred in dismissing Winters's wrongful lien claim either as moot or as barred by principles of collateral estoppel. Further, we hold the lis pendens filed by Schulman is invalid under section 78-40-2, and groundless as a matter of law. We remand to the trial court for a determination of damages and attorney fees payable to Winters. We affirm the trial court's conclusions that Winters's negligence claim fails as a matter of law because Schulman owed no duty to Winters, and that Winters failed to establish the necessary elements to support an abuse of process claim.

¶ 31 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶ 32 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge.

