2008 UT App 348

**DOUG JESSOP CONSTRUCTION, INC., dba Sage Builders, Petitioner and Appellee,**

v.

**Joseph D. ANDERTON and Prime Time Marketing Services, Inc., Respondents and Appellants.**

No. 20060979–CA.

Court of Appeals of Utah.

Oct. 2, 2008.

**494**

Joseph D. Anderton, North Salt Lake, Appellant Pro Se.

Barbara K. Polich and Angela W. Adams, Salt Lake City, for Appellant Prime Time Marketing Services.

John D. Morris and Jamie L. Nopper, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., BENCH, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 This appeal concerns the trial court's determination that a notice of interest and two lis pendenses recorded by the Appellants were wrongful liens under the Utah Wrongful Lien Act. Although this appeal suggests the existence of interesting questions about whether a notice of interest or a lis pendens can be considered a "lien" for purposes of the applicable version of the Act and whether a buyer's rights under a Real Estate Purchase Contract constitute an interest in land, we have no occasion to visit these issues because of Appellants' failure to preserve them.[1]  We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶ 2 The key facts are undisputed.  Appellant Joseph D. Anderton was the president of Prime Time Marketing Services, Inc. In October 2005, Anderton, on behalf of Prime Time, agreed to purchase a residence built by Appellee Doug Jessop Construction, Inc., which does business as Sage Builders (Sage).  To that end, Prime Time and Sage executed a Real Estate Purchase Contract (the REPC).  A dispute arose between the parties and the purchase was not completed.  Sage subsequently found other buyers and attempted to sell the residence to them.

¶ 3 On May 10, 2006, Anderton recorded a notice of interest on behalf of Prime Time "assert[ing] and claim[ing] an interest" in the property based on the REPC. As soon as Sage discovered that a notice of interest had been filed, Sage filed a petition seeking a civil wrongful lien injunction and requested that an immediate ex parte civil wrongful lien injunction issue as permitted by law.[2]  An-

---

1.  Appellant Joseph D. Anderton was represented by other counsel at trial and, indeed, by yet other counsel in the earlier stages of this appeal.  A third attorney ably argued the matter on his behalf but thereafter withdrew from representing Anderton personally because Anderton wished to represent himself for the purpose of making post-argument filings with this court.  Prime Time is still represented by the third attorney and her associate.  Almost immediately after filing his post-argument missives, Anderton died unexpectedly.  The remaining parties have not suggested that his death renders this appeal moot, in whole or in part.  See Utah R.App. P. 37.  Although given the opportunity, no personal representative has sought to be substituted for Anderton.  See id. 38(a).  Anderton's pro se, post-argument mo-

tions for summary disposition and for stay are denied;  his pro se, post-argument supplemental authority is stricken.

2.  "Any person who believes that he or she is the victim of a wrongful lien may file a verified written petition for a civil wrongful lien injunction against the person filing, making, or uttering the lien[.]"  Utah Code Ann. § 38–9a–201(1)(a) (2005).  Additionally, "[i]f the court determines there is reason to believe that a wrongful lien has been made, uttered, recorded, or filed, the court may issue an ex parte civil wrongful lien injunction[.]"  Id. § 38–9a–202(2).  Throughout this opinion, we cite to the versions of Utah statutes in effect at the time the trial court ruled, unless otherwise specifically noted.

derton, on behalf of Prime Time, promptly recorded a lis pendens against the residence, which recited "that an action has been commenced ... for the purpose of enforcing a Real Estate Purchase Contract."

¶ 4 Soon thereafter, the trial court entered an ex parte civil wrongful lien injunction, ordering removal of the notice of interest and the lis pendens, and enjoining Appellants from "making, uttering, recording, or filing any further liens without specific permission from the court." Anderton was served with the injunction, at which time Appellants requested a hearing.[3] At about that same time, Appellants filed an answer to the petition and a verified counterclaim, as well as a motion for leave to file a lis pendens and dissolve the ex parte civil wrongful lien injunction or, in the alternative, for a temporary restraining order to prevent Sage from selling or otherwise transferring the property. The trial court entered the requested temporary restraining order.

¶ 5 On August 11, 2006, the trial court held a hearing at which it addressed the propriety of Sage's wrongful lien injunction, as well as Appellants' motion for a preliminary injunction and objection to the wrongful lien injunction. At the conclusion of the hearing, the trial court left the wrongful lien injunction in place and dissolved the temporary restraining order against Sage. The trial court also concluded that Appellants' counterclaim was improperly filed. The court determined that its jurisdiction in the action filed by Sage extended only to determining whether a wrongful lien had been recorded and did not permit Appellants to assert any other claims against Sage.[4]

¶ 6 In its ruling, the trial court determined that the notice of interest was a wrongful lien based largely on what the court characterized as Appellants' concession that the lien

"was not a correct lien." The trial court also concluded that the lis pendens was a wrongful lien because it did not correspond to the filing of any foundational pleading.[5] Thus, the court ordered the removal of both the notice of interest and the lis pendens. In so doing, the trial court clarified that its ruling was not a "bar to any subsequent independent action of a lawsuit by respondent against petitioner ... for ... whatever relief he wishes to do. He is not prejudiced by my ruling; he can pursue the matter. And I'm sure that he will consider it."

¶ 7 Immediately after the hearing, Prime Time filed a complaint against Sage in the Third District Court for Salt Lake County, seeking specific performance under the REPC or, alternatively, money damages. Based on this newly filed complaint, Anderton recorded a second lis pendens on behalf of Prime Time, giving notice of the new action filed in Third District Court. On that same day, the trial court entered its order dissolving the temporary restraining order and permanently enjoining Appellants from "making, uttering, recording, or filing any further liens without specific permission from the court."

¶ 8 Counsel for Appellants also withdrew that same day. The next day, after receiving notice of the second lis pendens, Sage filed a motion to remove the lis pendens, based on the ground it was recorded in violation of the permanent injunction, and requested an expedited hearing. At the next hearing, the trial court ordered the removal of the second lis pendens.

¶ 9 Findings of fact entered by the trial court indicated that the notice of interest and first lis pendens constituted wrongful liens under the wrongful lien statute. The trial court awarded costs and attorney fees to

---

**3.** Once an ex parte injunction is issued, "[a] hearing requested by the respondent" in a civil wrongful lien action "shall be held within ten days from the date the request is filed." Utah Code Ann. § 38–9a–203 (2005).

**4.** For the reason explained in note 8 of this opinion, the validity of this ruling is not before us. *But see* Utah R. Civ. P. 8(e)(2) (In pleading, "[a] party may ... state as many separate claims ... as he has regardless of consistency and

whether based on legal or on equitable grounds or on both.").

**5.** The Utah lis pendens statute specifically states that "a notice of the pendency of [an] action" may be filed by "the plaintiff at the time of filing the complaint or thereafter, and the defendant at the time of filing his answer when affirmative relief is claimed in such answer, or at any time afterward." Utah Code Ann. § 78–40–2 (2002).

Sage in the amount of $16,091.17. Sage then filed a motion to hold Anderton in civil contempt of court for recording the second lis pendens. A criminal complaint was also initiated against Anderton. The trial court granted Sage's motion to hold Anderton in civil contempt of court, specifically finding that Anderton acted in contempt of the trial court's injunction "when he knowingly and intentionally recorded a [second] lis pendens on August 14, 2006, in direct violation of [the court's] order." This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Appellants first challenge the trial court's determination that the notice of interest and both lis pendenses were wrongful liens. *See* Utah Code Ann. § 38–9a–102 (2005) (" '[W]rongful lien' refers to a lien made in violation of Section 76–6–503.5, and includes an instrument or document as defined in Section 38–9–1.").[6] Appellants urge us to rule that, as a matter of law, a notice of interest cannot constitute a wrongful lien within the meaning of the Wrongful Lien Injunction Act. *See* Utah Code Ann. §§ 38–9a–101, –102 (2005). Whether a notice of interest or a lis pendens constitutes a wrongful lien would ordinarily present a "question of law which we review for correctness, giving no deference to the trial court's legal conclusions," *Russell v. Thomas*, 2000 UT App 82, ¶ 8, 999 P.2d 1244, although as later explained, the question comes to us in a procedural context that is factual in nature, warranting a measure of deference to the trial court's determination.

¶ 11 Appellants also claim that the trial court erred in ruling that a lis pendens may be removed pursuant to the Wrongful Lien Injunction Act, Utah Code Ann. §§ 38–9a–101 to –205 (2005), rather than solely under the lis pendens removal statute, *see id.* § 78–40–2.5 (Supp. 2007). While "[w]e re-

view questions of statutory interpretation for correctness, giving no deference to the district court's interpretation," *Board of Educ. v. Sandy City Corp.*, 2004 UT 37, ¶ 8, 94 P.3d 234, we will not consider for the first time on appeal issues that were not raised below, *see State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

¶ 12 Finally, we examine whether the trial court correctly concluded that the second lis pendens was recorded in violation of its injunction. This presents a question of law that we review for correctness. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I. Notice of Interest

■ ¶ 13 Appellants claim that the trial court erred in finding that their notice of interest constituted a "wrongful lien" within the meaning of the Utah Wrongful Lien Injunction Act.[7] *See* Utah Code Ann. § 38–9a–102 (2005). Sage, however, claims that there was a "concession" by Appellants at the August 11 hearing that the notice of interest was wrongful. To the extent there is any ambiguity in the pivotal exchange, it is appropriate for us to extend deference to the trial court's characterization of what happened at the trial level. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994) (stating that a trial judge is "in the best position to ... derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record"); *Carter v. Labor Comm'n Appeals Bd.*, 2006 UT App 477, ¶ 16 n. 3, 153 P.3d 763 (" '[A]ppellate courts have ample cause to defer to the judgment of trial judges on matters that cannot be reliably extracted and examined from ... a two-dimensional record.' ") (citation omitted).

6. Section 38–9–1(6) defines a wrongful lien as including "any document that purports to create a lien or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not: (a) expressly authorized by this chapter or another state or federal statute; [or] (b) authorized by or contained in an order or judgment of a court." Utah Code Ann. § 38–9–1(6) (2005). Section 76–6–503.5 is a provision of the Utah Criminal Code making it a crime to

record a wrongful lien. *See* Utah Code Ann. § 76–6–503.5(2)(b) (Supp.2007).

7. Interestingly, the Legislature recently saw fit to amend section 38–9–1 to add notices of interest to the description of what constitutes a wrongful lien. *See* Utah Code Ann. § 38–9–1(6) & amendment notes (Supp. 2008).

¶ 14 The trial court believed a concession was made by Appellants, through their counsel, that the notice of interest was indeed a wrongful lien. The key exchange is as follows:

> THE COURT: It appears to me that, reading the opposition filed by [counsel for Anderton and Prime Time], there seems to be some concession that maybe the notice of lien was not a—was not a correct lien—and, of course, you can correct me if I'm wrong, and I'm sure you will [counsel]—but it was not a correct lien.
>
> . . . .
>
> If I'm correct in my assumptions, then it appears that the motion to remove the wrongful lien is well taken, and the notice of interest should be removed.
>
> [Counsel], have I overstated your position?
>
> [COUNSEL]: No.

Counsel went on to make additional argument, but he did not retract or qualify the "No" offered in direct response to the court's question. Against the background of this exchange and without objection from Appellants' counsel, the court noted that with the ordered removal of the notice of interest, Sage had prevailed on its claim concerning the notice of interest.

¶ 15 A trial judge is "in the best position to . . . derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record." *Pena*, 869 P.2d at 936. In *Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382 (Utah Ct.App.1991), we declined to disturb the trial court's finding that a stipulation was entered into where "[t]he court questioned both counsel and the parties to ascertain whether they understood [the agreement]. The court then found that the stipulation was a fair and accurate representation of the parties' agreement[.]" *Id.* at 384. We think the *Richins* rationale is instructive here. In this case, the trial court was in a better position than we are to determine whether the remarks of counsel, in context and tone, constituted a concession. Given counsel's direct "No" answer when asked by the trial court if the court had overstated counsel's position, the trial court's characterization is entirely plau-

sible, and we will not substitute our judgment for the trial court's in this regard. *See In re Z.D.*, 2006 UT 54, ¶ 24, 147 P.3d 401 ("The doctrine that shapes and guides judicial review is that it is not within the province of an appellate court to substitute its judgment for that of a front line fact-finder except when exceptional circumstances warrant more rigorous scrutiny.").

¶ 16 It is entirely appropriate to extend the trial court deference in the characterization of what happened in the proceedings before it. Given the language that appears of record, we cannot say that the trial court erred in characterizing the discourse between the court and Appellants' counsel as a concession that the notice of interest constituted a wrongful lien. Accordingly, we affirm the trial court's judgment that the notice of interest in this case should be deemed a wrongful lien.

## II. First Lis Pendens

¶ 17 Appellants argue that a lis pendens is not a lien for purposes of the Wrongful Lien Injunction Act. They also contend that a lis pendens cannot be removed pursuant to the Act, *see* Utah Code Ann. §§ 38–9a–101 to –205 (2005), and may only be removed under the lis pendens removal statute, *see* Utah Code Ann. § 78–40–2.5 (Supp.2007). Finally, Appellants assert that the trial court erred in disallowing the first lis pendens on the expressed rationale that its recordation was not warranted by the filing of a proper underlying pleading. In response, Sage argues that all of these issues are raised for the first time on appeal.

¶ 18 "Issues not raised at trial are usually deemed waived" and cannot be argued for the first time on appeal. *Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998). " '[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *438 Main Street v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (citations omitted). This puts the trial court on notice of any asserted error and allows the court to correct such error in the course

of the proceeding. *See Badger,* 966 P.2d at 847. For a trial court to effectively rule on an issue, three requirements must be met: "(1) 'the issue must be raised in a timely fashion'; (2) 'the issue must be specifically raised'; and (3) a party must introduce 'supporting evidence or relevant legal authority.'" *Id.* (quoting *Hart v. Salt Lake County Comm'n,* 945 P.2d 125, 130 (Utah Ct.App. 1997)).

■ ¶ 19 A review of the record in the case before us indicates that Appellants failed to preserve their claim that a lis pendens is not a lien for purposes of the wrongful lien statute as well as the issue of whether a lis pendens can be removed pursuant to the wrongful lien statute or whether the lis pendens statute provides the exclusive vehicle for doing so. We therefore deem these arguments waived and do not reach their merits. As to the remaining argument, we readily agree that the first lis pendens was improper because it preceded rather than followed the filing of the counterclaim. *See supra* note 5. *See also Winters v. Schulman,* 1999 UT App 119, ¶ 20, 977 P.2d 1218 (noting that litigation must already be pending in order for a lis pendens to be properly recorded), *cert. denied,* 994 P.2d 1271 (Utah 1999). Accordingly, we will not disturb the trial court's judgment that the first lis pendens was a wrongful lien.[8]

### III. Second Lis Pendens

■ ¶ 20 Sage claims, and the trial court agreed, that the second lis pendens—the one recorded in conjunction with the subsequent action initiated by Appellants—was recorded in violation of the injunction barring Anderton and Prime Time from "making, uttering, recording, or filing any further liens." Appellants, however, claim that the trial court erred in finding the second lis pendens violated the injunction because the trial court essentially invited the filing of Appellants' separate action, which independently and predictably triggered the concomitant recordation of the second lis pendens. We agree.

¶ 21 At the August 11 hearing, the court asked counsel for Sage whether Appellants were "entitled to [record] a lis pendens based upon the counterclaim that they filed in [the] action." Counsel for Sage responded:

MR. MORRIS: .... What they should have done is filed another complaint to assert their claims....

THE COURT: They still can.

MR. MORRIS: Yeah, they still could, that's right....

In its bench ruling that followed, the trial court stated:

The Court is of the opinion that this statute was for the specific purpose, as argued by [Sage] in this matter[,] and that the counterclaim was not properly filed and does not preserve the position [i.e., does not validate the first lis pendens]. However, that does not mean that on subsequent—in any subsequent action, my ruling is no bar to any subsequent independent action of a lawsuit by respondent against petitioner and whomever else for all of the alleged damages and whatever relief he wishes to do. He is not prejudiced by my ruling; he can pursue the matter. And I'm sure that he will consider it.

■ ¶ 22 We agree that Appellants were invited by the trial court to file a separate lawsuit to assert their claims under the REPC. The lis pendens statute authorizes a party who files a suit concerning the title to, or right to possession of, real property to record a lis pendens—a notice of the pendency of the action. *See* Utah Code Ann. § 78-40-2 (2002). To satisfy the lis pendens statute, a claim affecting the property must be *pending* at the time the lis pendens is recorded. *See Hansen v. Kohler,* 550 P.2d 186, 190 (Utah 1976) (noting that the foundation of a lis pendens "is the action filed—it has no existence independent of it"); *Winters v. Schulman,* 1999 UT App 119, ¶ 22, 977 P.2d 1218 (holding lis pendens to be invalid under section 78-40-2 "when no pending action affecting title to or possession of Utah property exists at the date of filing"), *cert.*

---

**8.** Appellants also argue that the trial court erred in dismissing their counterclaim. However, because Appellants also failed to properly preserve this issue for appeal, the dismissal will not be disturbed.

*denied,* 994 P.2d 1271 (Utah 1999). Thus, the lis pendens statute clearly provides that recording a lis pendens is proper upon the filing of a complaint if that complaint commences an action affecting the title to or possession of real property, or of a counterclaim if the counterclaim first implicates title or possession of real estate. *See* Utah Code Ann. § 78–40–2 (2002) ("In any action affecting the title to, or the right of possession of, real property the plaintiff at the time of filing the complaint ... and the defendant at the time of filing his answer when affirmative relief is claimed in such answer, ... may file ... a notice of the pendency of the action[.]").

¶ 23 The trial court held that Appellants' counterclaim was not properly asserted in a wrongful lien injunction action, making the first lis pendens improper. In dismissing the counterclaim, the trial court specifically stated: "[M]y ruling is no bar to any subsequent independent action of a lawsuit by respondent" and "[h]e is not prejudiced by my ruling; he can pursue the matter." This direction would not foreclose the recording of a lis pendens pertaining to a new lawsuit if the new lawsuit was of a sort that properly triggers the recording of a lis pendens. While the trial court did not expressly authorize the recording of a new lis pendens should Appellants choose to file a new action, the court specifically authorized a new lawsuit that would logically permit a lis pendens to be filed.[9] Thus, we must reverse the trial court's determination that Anderton violated the wrongful lien injunction by recording the second lis pendens because the lawsuit of which it gave notice was both authorized by the trial court and by statute.[10]

## IV. Attorney Fees

¶ 24 Sage, Anderton, and Prime Time all ask for attorney fees incurred on appeal. Appellants also ask for an award of attorney fees incurred in the proceedings before the trial court. We remand so the trial court can reduce the award of fees to Sage to the extent, if any, that the award is attributable to litigating the propriety of the second lis pendens, on which issue Sage was not ultimately successful. *See Mountain States Broad. Co. v. Neale,* 783 P.2d 551, 556 & n. 10 (Utah Ct.App.1989). As for fees and costs on appeal, the parties shall bear their own because neither side can be said to have prevailed, each side having prevailed only in part.

## CONCLUSION

¶ 25 We defer to the trial court's determination that Appellants conceded the notice of interest was a wrongful lien. We hold that there is no basis properly before us on which to disturb the trial court's ruling that the first lis pendens was a wrongful lien. We reverse the trial court's determination that the second lis pendens was recorded in violation of the court's injunction. We remand for reduction of the attorney fees awarded to Sage, if appropriate.

¶ 26 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and RUSSELL W. BENCH, Judge.

---

9. Moreover, the trial court did broadly refer to Anderton's ability to pursue "whatever relief he wishes to do."

10. Appellants ask us to evaluate whether the trial court erred in determining that the subsequent purchasers of the property were bona fide purchasers. Given our disposition, we need not address this issue.