2001 UT App 394

**VIKTRON/LIKA Utah, Petitioner,**

v.

**LABOR COMMISSION and Joyce R. Wright, Respondents.**

No. 20000386–CA.

Court of Appeals of Utah.

Dec. 13, 2001.

Bruce Wycoff and James W. Naisbitt, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for Petitioner.

David H. Schwobe and Kenneth B. Grimes, Jr., Perkins, Schwobe & McLachlan, Salt Lake City, for Respondents.

Before GREENWOOD, P.J., JACKSON, Associate P.J., and ORME, J.

1. This statute has been amended since the time Wright's claim arose. However, because the subsequent amendments are not relevant to this appeal, we cite to the most recent version of the statute.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Appellant Viktron/Lika Utah (Viktron) appeals the decision of the Appeals Board (Board) of the Utah Labor Commission (Commission), which ruled that "Viktron retaliated against [Joyce R. Wright] in violation of the Utah Antidiscrimination Act," see Utah Code Ann. §§ 34A–5–101 to –107 (Supp. 2001)[1] and affirmed the Commission's award of damages to Wright. We affirm in part and remand.

## BACKGROUND

¶ 2 Wright, an engineer, worked for Viktron as a cam operator from March 1995 to October 20, 1995, when she was involuntarily terminated. During the course of Wright's employment, she came under the supervision of Steve Underwood. Wright and Underwood "butted heads" on numerous occasions, Wright responding with defiance to Underwood's heavy-handed, belittling, and aggressive manner. Wright complained to Viktron management about Underwood several times. Those complaints led to an internal investigation of Underwood for gender-based harassment. Wright was terminated for insubordination hours after she lodged her last complaint on October 20, 1995. In her final complaint, Wright alleged that Underwood was transferring aggression he felt toward his ex-wife to Wright because Wright is a woman.[2]

¶ 3 Following a formal evidentiary hearing, the Commission "determined that Viktron had unlawfully discriminated and retaliated against [Wright]." The Board reversed the Commission's determination as to unlawful discrimination, but affirmed its determination as to unlawful retaliation. Viktron appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 4 Viktron first challenges the Board's determination that Wright's com-

2. Viktron concedes Underwood was an ill-tempered, unqualified manager. It thus finds itself in the difficult position of defending itself largely by contending that Underwood did not discriminate between men and women in his mistreatment of its employees.

plaints were "protected opposition" for purposes of a retaliation claim under Utah Code Ann. §§ 34A–5–102(17), –106 (Supp.2000), of the Utah Antidiscrimination Act, simply because Wright alleged discrimination. Because the Legislature has not granted this agency discretion to interpret the Utah Antidiscrimination Act, we review the Board's determination for correctness. *See Allred v. Utah State Ret. Bd.,* 914 P.2d 1172, 1174 (Utah Ct.App.1996).

¶ 5 Viktron also challenges the Board's determinations that: (1) Viktron took adverse action subsequent to a protected activity, (2) there was a causal connection between the protected activity and the subsequent adverse action, and (3) Viktron did not have a legitimate, non-discriminatory basis for terminating Wright's employment. These are factual determinations. Thus, Viktron "must marshal all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989). We review the Board's findings in light of the whole record. *See Whitear v. Labor Comm'n,* 973 P.2d 982, 984 (Utah Ct.App. 1998).

### ANALYSIS

¶ 6 Utah Code Ann. § 34A–5–106(1)(a)(i) (Supp.2001) prohibits retaliation against an employee engaged in opposition to illegal discrimination. Retaliation is defined as "the taking of adverse action by an employer . . . against one of its employees . . . because the employee . . . has opposed any employment practice prohibited under this chapter." *Id.* § 34A–5–102(17). These sections, in effect, set forth the same elements as are required in a federal Title VII retaliation claim:

A Title VII plaintiff alleging retaliatory discharge must make a prima facie case by showing that "1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; 2) adverse action by the employer subsequent to the protected ac-

tivity; and 3) a causal connection between the employee's activity and the adverse action."

*Robbins v. Jefferson County Sch. Dist. R–1,* 186 F.3d 1253, 1258 (10th Cir.1999) (citation omitted). Since the application of these provisions presents an issue of first impression in Utah, we find the substantial body of federal Title VII law to be useful.

¶ 7 Once a plaintiff has established a prima facie case of retaliation, the employer bears the burden of showing a legitimate, non-discriminatory reason for terminating the plaintiff. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir.1999) (noting that this burden-shifting analysis is guided by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824 (1973)). If the employer can carry its burden, the burden shifts back to the plaintiff to show that the employer's "legitimate" reason is pretextual. *See id.*

¶ 8 Though this burden-shifting formula is the usual manner by which a plaintiff brings a retaliation claim, the Tenth Circuit allows

the plaintiff [to] also establish discrimination directly, in which case the [burden-shifting] framework is inapplicable.

To prevail via this direct method, a plaintiff must introduce direct or circumstantial evidence that the alleged retaliatory motive "actually relate[s] to the question of discrimination in the particular employment decision, not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace."

*Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 550 (10th Cir.1999) (citations omitted). In other words, a plaintiff must present direct "evidence that retaliation played a motivating part in defendant's decision to discharge" the plaintiff. *Id.* It then becomes the "defendant's burden to prove by a preponderance that it 'would have made the same decision' notwithstanding its retaliatory motive." *Id.* (citation omitted). Thus, showing direct evidence of retaliatory motive seems to obviate the need to show a plaintiff's reasonable, good faith belief that she had engaged in protected activity. At oral argument,

Wright's counsel urged us to affirm the Board's ruling on her retaliation claim under this "direct evidence of retaliatory" motive analysis. *Id.* at 551. However, because this issue was raised for the first time on appeal and was not adequately briefed, we decline to address it. *See State v. Arviso,* 1999 UT App 381,¶ 4 n. 2, 993 P.2d 894; *State v. Thomas,* 961 P.2d 299, 304 (Utah 1998).

¶ 9 To challenge the Board's determination that Wright's complaints were "protected opposition," *see* Utah Code Ann. §§ 34A–5–102(17), –106(1)(a)(i), Viktron argues that Wright's conduct constituted mere insubordination and argumentativeness rather than protected opposition. Thus, we discuss what constitutes protected opposition.

■ ¶ 10 The federal circuit courts overwhelmingly require a plaintiff in Wright's position to show a *good faith, reasonable belief* that his or her employer had discriminated against him or her.[3] We have not previously addressed whether this standard applies to the protected opposition prong in a retaliation claim under the Utah Antidiscrimination Act. We adopt the standard espoused by the vast majority of the federal circuit courts. That is, we will review the first prong of a retaliation claim to determine whether the plaintiff had a good faith, reasonable belief that he or she engaged in protected opposition to discrimination as described under section 34A–5–106.[4] *See, e.g., McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d Cir.2001); *Higgins v. New Balance Athletic Shoe Inc.,* 194 F.3d 252, 261–62 (1st Cir.1999).

¶ 11 Addressing the protected opposition prong, the Board merely concluded: "[I]t is clear that [Wright's] complaints to Viktron management alleging gender discrimination constituted protected opposition to discrimination." By so ruling, the Board could have meant (1) that Wright's complaints were "protected opposition" simply because they allege discrimination or (2) that Wright's mere subjective good faith belief is obvious from the facts and satisfies the protected opposition prong without regard to the reasonableness of her belief.[5] As explained, these views would be legally incorrect. The Board could also have meant that the good faith reasonableness of Wright's belief is obvious from the facts. Thus, the Board's ruling is insufficient, and we remand this issue for the Board to determine whether Wright had a good faith, reasonable belief that she had engaged in protected opposition to discrimination under section 34A–5–106.

¶ 12 Viktron next challenges the Board's determination regarding the adverse action prong. The Board determined that Viktron took adverse action subsequent to a protected activity. Viktron has admitted that it terminated Wright subsequent to Wright's complaints of discrimination. Thus, if the Board determines that Wright made those complaints reasonably and in good faith, this element is also satisfied.

■ ¶ 13 Finally, Viktron challenges the Board's determination regarding the causal connection prong. Assuming the Board determines on remand that Wright's activities were protected, i.e., that she had a good faith, reasonable belief that she had engaged in protected opposition to unlawful gender

---

3. *See Higgins v. New Balance Athletic Shoe Inc.,* 194 F.3d 252, 261–62 (1st Cir.1999); *McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d Cir. 2001); *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1085 (3d Cir.1996); *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir.1996); *Hamner v. St. Vincent Hosp. & Health Care Ctr.,* 224 F.3d 701, 707 (7th Cir.2000); *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 714–15 (8th Cir.2000); *Moyo v. Gomez,* 40 F.3d 982, 984 (9th Cir.1994); *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir.1997); *Parker v. Baltimore & Ohio R.R.,* 652 F.2d 1012, 1020 (D.C.Cir.1981).

4. Sound policy considerations support a balanced approach. We do not wish to chill employee opposition to improper discrimination by requiring the employee to be correct in his belief that the employer's protested action was illegal discrimination in order for that opposition to be protected. *Accord Little,* 103 F.3d at 960. However, insulating an employee from an employer's retaliation for an unreasonable or bad-faith claim of discrimination also seems unwise. The approach adopted by most federal courts, which we also adopt, strikes a more appropriate balance.

5. A small minority views this last possibility as the proper meaning of "protected opposition." *See, e.g., Glover v. South Carolina Law Enforcement Div.,* 170 F.3d 411, 414 (4th Cir.1999).

discrimination, Wright must show a causal connection between the protected activity and the subsequent adverse action. *See* Utah Code Ann. § 34A–5–106; *Robbins,* 186 F.3d at 1258. Viktron contends that the Board erred in finding that a causal connection exists because that finding "is not supported by substantial evidence when viewed in the light of the whole record before the Court." We disagree. " 'Substantial evidence' is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990); *accord Grace Drilling v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989).

¶ 14 The following evidence was "adequate to convince," *id.,* the Board that a causal connection existed between Wright's protected activities and her termination:

> Although Viktron argues Ms. Wright was discharged for a pattern of insubordination, it was Viktron's company policy to provide warnings and counseling for employees engaged in unacceptable behavior. Ms. Wright had received no prior warnings or counseling regarding her alleged insubordination. Furthermore, Viktron terminated Ms. Wright's employment almost immediately after she lodged her October 20, 1995, complaint of gender discrimination.[6] Finally, the testimony of Viktron's personnel manager suggests that Viktron discharged Ms. Wright because of her complaints.

¶ 15 After reviewing the record, we conclude that this "quantum and quality of relevant evidence . . . is adequate to convince a reasonable mind to support" the Board's conclusion regarding the causal connection prong. *Id.* Accordingly, we affirm the Board's finding that a causal connection exists between Wright's opposition and the termination of her position with Viktron.[7] We also conclude that if the Board determines that Wright satisfies the first prong of good

faith, reasonable engagement in protected opposition, she will have established her case of retaliation.

¶ 16 One additional issue requires comment. Once a plaintiff alleging retaliation has established a prima facie case, "the burden shifts to Defendant to come forward with a non-discriminatory reason for its employment decision. If the employer presents a non-discriminatory reason for its decision, the burden shifts back to the Plaintiff. . . ." *Anderson,* 181 F.3d at 1178 (citation omitted); *cf. University of Utah v. Industrial Comm'n,* 736 P.2d 630, 634–35 (Utah 1987) (applying a similar burden-shifting analysis to age discrimination in hiring procedures).

¶ 17 To rebut Wright's prima facie case, Viktron argued below that Wright's sustained course of insubordination provided a legitimate, nondiscriminatory reason for terminating Wright. Wright asserts that the Board "implicitly" determined that Viktron's non-discriminatory basis for terminating her employment was pretextual or at least inconsequential or secondary. However, the Board failed to directly address this issue. Because we are already remanding the case to the Board, we also remand this issue for explicit consideration.

## CONCLUSION

¶ 18 We remand to the Board to determine if Wright had a good faith, reasonable belief that she had engaged in protected opposition to discrimination under Utah Code Ann. § 34A–5–106 (Supp.2000). We also remand for consideration of Viktron's suggested "legitimate reason" for Wright's termination. The Board's rulings are otherwise affirmed.

¶ 19 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, GREGORY K. ORME, Judge.

---

6. "Normally, a close temporal proximity between the protected conduct and the adverse employment action '*may* justify an inference of retaliatory motive.'" *Kelley v. Goodyear Tire and Rubber,* 220 F.3d 1174, 1179 (10th Cir.2000) (quoting *Marx v. Schnuck Markets Inc.,* 76 F.3d 324, 329 (10th Cir.1996)).

7. In light of this conclusion, we do not address Wright's argument that Viktron did not marshal the evidence sufficiently regarding the causal connection prong.