2006 UT App 477

**Susan CARTER, Petitioner,**

v.

**LABOR COMMISSION APPEALS BOARD and Sullivan–Schein Dental Co., Respondents.**

**No. 20050789–CA.**

Court of Appeals of Utah.

Nov. 30, 2006.

Kenneth B. Grimes Jr. and Richard W. Perkins, Salt Lake City, for Petitioner.

Alan L. Hennebold and Mark O. Morris, Snell & Wilmer, Salt Lake City, Charles W. Pautsch, Murphy Gillick Wicht & Prachthauser, and Joseph E. Gumina, Milwaukee, Wisconsin, for Respondents.

Before BENCH, P.J., GREENWOOD, Associate P.J., and DAVIS, J.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Petitioner Susan Carter petitions for review of the Utah Labor Commission Appeals Board's (the Board) order setting aside the Administrative Law Judge's (ALJ) decision and dismissing Carter's retaliation complaint brought under the Utah Antidiscrimination Act (the Act). *See* Utah Code Ann. §§ 34A–5–101 to –108 (2005). We affirm.

## BACKGROUND

¶2 Carter was employed as a sales representative with Mountain West Dental from November 1992 until August 1993. During this time, Parke Simmons and Blaine Brown supervised Carter at Mountain West Dental. Between August 1993 and August 1997, Carter was employed by Henry Schein, Inc. (Henry Schein), and Simmons and Brown were employed by Sullivan Dental Products, Inc. (Sullivan Dental).

¶ 3 In August 1997, a merger occurred between Henry Schein and Sullivan Dental, forming Sullivan–Schein Dental Co. (Sullivan–Schein). Carter, Simmons, and Brown were all assigned to Sullivan–Schein's sales staff in Salt Lake City. On December 14, 1997, Carter wrote and sent a letter (complaint letter) to Sullivan–Schein management, alleging that Simmons and Brown had subjected her to gender discrimination when they were all employed by Mountain West Dental. In the complaint letter, Carter requested that she not be assigned to work in the same office with Simmons or Brown.

¶ 4 Sullivan–Schein's vice president directed a manager to advise Simmons and Brown of Carter's complaint and to tell them to refrain from any retaliation against her. The vice president then sent a letter to Carter, stating that her complaint had been investigated and handled properly. The letter also stated that if she experienced any retaliation she should contact him immediately. Simmons and Brown continued to work in the Salt Lake City office with Carter. Carter did not contact the vice president with complaints of retaliation.

¶ 5 Prior to the merger, sales representatives from Henry Schein and Sullivan Dental often competed against one another for the same accounts. After the merger, more than one sales representative sometimes called on the same accounts, which Sullivan–Schein termed "crossover" accounts. In order to quell the inter-company competition and resulting tension between sales representatives, Sullivan–Schein gradually began assigning the crossover accounts so that only one sales representative was assigned to each account. Until these assignments were completed, sales representatives were instructed to call on only their current accounts. Despite this instruction, Sullivan–Schein management and sales staff were concerned about "poaching," which occurred when a sales representative continued to call on an account assigned to another sales representative. At a company meeting, all of the Salt Lake sales representatives were advised of the new policies and were also warned that competition against each other would lead to termination.

¶ 6 Subsequently, two sale representatives, Mike Butler and Melanie Bingham, complained to the manager of the Salt Lake Region, Joe Scheutzow, that Carter violated the company policy by poaching their accounts. Butler, purportedly assigned to the Dr. Brooks account, complained that Carter had told the doctor that she was to be his contact. Butler then lost the account. The record is unclear as to whether Carter had been told that the Dr. Brooks account was assigned to Butler.

¶ 7 Next, Bingham complained that Carter tried to solicit Bingham's Dr. Clegg account. Carter admits she knew the Dr. Clegg account was Bingham's and claims that she did not try to solicit the account, but rather attempted to clarify a new computer billing system for Dr. Clegg's office. After receiving Bingham's complaint, James Engle, the manager for the western zone and Scheutzow's direct supervisor, wrote a letter to Carter warning her of termination if she continued to attempt to contact customers of other Sullivan–Schein sales representatives. Prior to sending the letter, Engle did not speak to Carter about the complaints that had been lodged against her. Carter was the only, or one of the few, sales representatives within the company to be admonished for violating the new policies.

¶ 8 Thereafter, Butler lodged his second complaint against Carter, claiming that she attempted to poach his Heritage Central account. Carter maintained that the Heritage Central account was hers prior to the merger. Again, the record is unclear as to whether Carter was aware that the account had been assigned to Butler after the merger.

¶ 9 After this third complaint, Engle and Scheutzow decided that Carter should be terminated. Engle testified that prior to terminating Carter, he had known about Carter's complaint letter. Nevertheless, he claimed that he did not know the contents of the complaint letter, including that Carter had alleged past gender discrimination by current Sullivan–Schein employees. He also stated that he had not spoken to Simmons or Brown about the complaint letter. Carter testified that she and Scheutzow spoke about her complaint letter. Simmons also testified

that prior to Carter's termination from Sullivan–Schein, he had discussed Carter's complaint letter with Scheutzow. However, Scheutzow denied that he knew about Carter's complaint letter before terminating her.

¶ 10 Carter filed a charge of discrimination with the Utah Anti–Discrimination and Labor Division, alleging that her employer, Sullivan–Schein, terminated her in retaliation for her gender discrimination complaint, in violation of Utah Code section 34A–5–106(1)(a)(i)(C) of the Act. *See* Utah Code Ann. § 34A–5–106(1)(a)(i)(C) (2005) ("An employer may not ... retaliate against ... any person otherwise qualified, because of sex."); *see also id.* § 34A–5–102(17)(a) (2005) (defining retaliation as "the taking of adverse action by an employer ... against one of its employees ... because the employee ... has opposed any employment practice prohibited under this chapter.").

¶ 11 After a four-day hearing, the ALJ found that Sullivan–Schein had violated the Act by terminating Carter in retaliation for her gender discrimination complaint. Carter was awarded damages totaling $191,649.72. Sullivan–Schein appealed. The Board reversed the ALJ's order and found that Sullivan–Schein had not terminated Carter in retaliation for her complaint letter, and therefore, had not violated the Act. The Board dismissed Carter's claim with prejudice and denied her motion to reconsider. Carter now petitions for judicial review.

## ISSUE AND STANDARD OF REVIEW

¶ 12 Carter argues that the Board's findings are not supported by substantial evidence and should therefore be reversed. Whether Sullivan–Schein retaliated against Carter in violation of the Act is a factual determination. *See Viktron/Lika Utah v. Labor Comm'n*, 2001 UT App 394, ¶ 5, 38

P.3d 993. We will reverse the Board's determination of fact only if it is "not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (2004); *see also Commercial Carriers v. Industrial Comm'n*, 888 P.2d 707, 710 (Utah Ct.App.1994). In challenging the Board's factual determination, Carter " 'must marshal all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence.' " *Viktron/Lika*, 2001 UT App 394 at ¶ 5, 38 P.3d 993 (quoting *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah Ct.App.1989)).

## ANALYSIS

¶ 13 Carter contends that the Board's findings of fact are not supported by substantial evidence. In particular, Carter challenges the Board's finding that she did not establish a causal connection between her complaint letter and her termination.[1] " ' "Substantial evidence" ' is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Id.* at ¶ 13 (quoting *First Nat'l Bank of Boston v. County Bd. of Equalization*, 799 P.2d 1163, 1165 (Utah 1990)). After reviewing the whole record, we determine that there is substantial evidence to support the Board's finding that Sullivan–Schein did not terminate Carter in retaliation for her gender discrimination complaint.

¶ 14 First, there is evidence supporting the Board's determination that Sullivan–Schein responded to Carter's complaint letter promptly and appropriately. The Board also found it significant that the alleged gender discrimination had taken place several years prior in a different company. In addition,

---

1. Utah Code sections 34A–5–106(1)(a)(i) and 34A–5–102(17) require a petitioner to establish the same elements that are required under a federal Title VII retaliation claim. *See Viktron/Lika Utah v. Labor Comm'n*, 2001 UT App 394, ¶ 6, 38 P.3d 993; *see also* Utah Code Ann. §§ 34A–5–106(1)(a)(i), –102(17)(a) (2005). Under both Utah and federal law, a petitioner establishes a prima facie case of retaliatory discrimination "by showing that '1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; 2) adverse action by the employer subsequent to the protected activity; 3) a causal connection between the employee's activity and the adverse action.' " *Viktron/Lika*, 2001 UT App 394 at ¶ 6, 38 P.3d 993 (quoting *Robbins v. Jefferson County Sch. Dist. R–1*, 186 F.3d 1253, 1258 (10th Cir.1999) (citation omitted)).

the Board noted that two Sullivan–Schein employees filed complaints that they believed Carter had poached their accounts, and that Sullivan–Schein also believed Carter had violated the company's rules of conduct. There is also evidence that Sullivan–Schein's failure to more fully investigate the employees' complaints about Carter were attributable in part to the manager's multiple responsibilities and to confusion caused by the merger.[2]

¶ 15 Carter argues that the Board exceeded its authority by considering "arguments" neither party raised—namely, Sullivan–Schein's "prompt and effective remedial action" in response to Carter's complaint letter, and explanations for Sullivan–Schein's failure to investigate the details of the complaints against Carter. Carter also alleges that the Board failed to consider or give any weight to the ALJ's credibility determinations. Finally, Carter claims that Utah law does not support the Board's reliance on the fact that she did not establish, as part of her prima facie retaliation case, that her "underlying discrimination complaint involve[d] contemporaneous events at the current employer."

¶ 16 We believe that the Board did not consider new "arguments," but instead properly drew inferences from the evidence previously submitted in the case and, based on that evidence, reversed the ALJ's finding. *See* Utah Code Ann. § 34A–1–303(4)(a)(iv), (c)(i) (2005) (stating that the Board may base its decision on evidence previously submitted and may "reverse the findings, conclusions, and decision of an administrative law judge"). Furthermore, although the ALJ initially hears the testimony and observes the witnesses, the Board is the ultimate fact finder and may draw different inferences from the evidence. *See Commercial Carriers v. Industrial Comm'n,* 888 P.2d 707, 710–11 (Utah Ct.App.1994). Thus, the Board properly

made different credibility determinations.[3] Finally, we disagree that the Board required Carter to establish, as a prima facie element, that the events were contemporaneous with the current employer. Instead, the Board merely drew a different conclusion from the fact that the alleged discrimination took place several years prior to Carter's termination, within a different company. We cannot say the Board acted improperly by forming its own inferences from the evidence.

¶ 17 Turning to our review of the record, we conclude that the evidence was adequate to convince a reasonable mind to support the Board's findings. *See id.* at 711. Our review involves "weighing evidence that both supports and detracts from the [Board's] finding." *Id.* (citation omitted). Indeed, our review disclosed evidence that supports the Board's finding that Carter's termination was not a result of her complaint letter. Although there was competing evidence, "[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989). In short, "[we] will not substitute [our] judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." *Id.*

## CONCLUSION

¶ 18 Under Utah statute and case law, the Board is entitled to draw inferences differing from those of the ALJ. After reviewing the record, we conclude that there was substantial evidence to support the Board's order dismissing Carter's retaliation complaint with prejudice. Accordingly, we affirm.

2. The Board also observed that it was possible the complaints about Carter's violation of company policy were in error.

3. Typically, appellate courts are not charged with making credibility determinations. *See In re Z.D.,* 2006 UT 54, ¶ 24, 147 P.3d 401 ("[Appellate courts] do not view first-hand witnesses' 'tells' of posture, inflection, or mood that strengthen or erode credibility. It is the lot of appellate judges to take their sustenance from the printed

page.... Thus, appellate courts have ample cause to defer to the judgment of trial judges on matters that cannot be reliably extracted and examined from such a two-dimensional record."). Nonetheless, administrative law proceedings present a circumstance whereby the entity at the first level of appeal may make its own credibility determinations based on the record.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and JAMES Z. DAVIS, Judge.