2012 UT 64

**In re Honorable Keith L. STONEY.**

**No. 20110862.**

Supreme Court of Utah.

Sept. 28, 2012.

---

Keith L. Stoney, West Valley City, pro se petitioner.

Susan L. Hunt, Ogden, for respondent.

Associate Chief Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 The Judicial Conduct Commission recommended a reprimand against the Honorable Keith L. Stoney due to the issuance of an excessive warrant. As required by the Utah Constitution, the recommendation now comes before this court for review. Judge Stoney argues that the excessive amount of the warrant was a mistake not amounting to misconduct. We agree and decline to discipline Judge Stoney.

## BACKGROUND

¶ 2 Judge Stoney has been a Justice Court Judge in Utah for ten years. On May 9, 2009, Barbara Acord received a citation for driving with an expired registration and no insurance. The citation was filed at the West Valley City Justice Court. Although Ms. Acord provided proof of insurance, she failed to pay or appear on the expired registration charge. On June 23, 2010, the court sent her a notice explaining that she was delinquent on paying the expired registration fee. On July 7, 2010, Ms. Acord called the court. She was angry that she had received a fine and told the clerk that she had expected the Department of Motor Vehicles would resolve

the citation. Ms. Acord was rude to the clerks she spoke with on the phone, yelling at them and accusing them of "twiddling their thumbs" while her tax dollars paid their salaries. A court date for Ms. Acord to appear on the citation was set for August 4, 2010. Information concerning Ms. Acord's case was recorded in the docket. The docket notes detail Ms. Acord's behavior during the telephone calls; an entry on the docket then reads: "Note: DOCKET SUBMITTED TO JUDGE FOR REVIEW. PER JUDGE STONEY: ISSUE $10,000 CASH ONLY WARRANT. DEF MUST APPEAR AND SEE JUDGE STONEY ONLY ON 8/4/10 AT 8:30 AM."

¶ 3 Trista Mutchler, the justice court clerk who made that entry, explained that she was aware of the phone calls when she found a handwritten note for a warrant from Judge Stoney placed on her desk. The court had a heavy caseload that day and Ms. Mutchler testified that she had no specific recollection of the note itself. She remembered the amount because $10,000 is unusual for a traffic citation. Ms. Mutchler asked her supervisor if she should issue the warrant. Ms. Mutchler's supervisor advised her to issue it. Although Ms. Mutchler's initial impression upon seeing the warrant amount was that it was "overkill ... kind of like a point was trying to be made," she explained at the hearing that she did not actually know whether Judge Stoney had heard about the rude remarks Ms. Acord made to the clerks. The handwritten note was not in the file and has never been located.

¶ 4 On August 4, 2010, Ms. Acord appeared before Judge Stoney on the expired registration charge. Ms. Acord was never arrested on the warrant and it was recalled when she appeared on that date. According to Amy Jones, a prosecutor at the West Valley City Attorney's Office who was in court that day, Ms. Acord was rude when she appeared. She complained in court about the clerks. According to the bailiff, while Ms. Acord was complaining, one of the clerks advised Judge Stoney to look at the docket notes in Ms. Acord's file. After reading the notes, Judge Stoney told Ms. Acord that her behavior towards the clerks was unacceptable. Ulti-

mately, Ms. Acord entered a plea on the expired registration charge and received a fine. Ms. Acord was unhappy with Judge Stoney after her court appearance and filed a complaint.

¶ 5 The Judicial Conduct Commission investigated the complaint regarding Judge Stoney's conduct on August 4, 2010. The Commission discovered the $10,000 warrant and requested a response from Judge Stoney. Judge Stoney responded denying the charges and stating that the warrant amount was "most likely a miscommunication or clerical error." The Commission then conducted a hearing. At the hearing, Judge Stoney testified. He explained to the Commission:

> I was a little taken aback by [the complaint], because, frankly, we just don't do $10,000 warrants on traffic matters.... I did not recall issuing a $10,000 warrant on a traffic offense. I still don't recall issuing a $10,000 warrant on a traffic offense. Do I believe I did? I believe I must have. I don't think Trista [Mutchler] would tell you anything that wasn't the truth.... I did not willfully go after this lady or willfully try to make an example of her.... I can issue a warrant for a million dollars on a speeding ticket or on a registration ticket. The jail isn't going to accept this person [because] the jail is full.

Judge Stoney hypothesized that he might have misplaced a comma or transposed the warrant amount in Ms. Acord's case with that in a much more serious case.

¶ 6 After the hearing, the Commission issued the following relevant findings of fact:

> The order to issue a $10,000 cash only warrant was handwritten by Judge Stoney, but the document on which it was written has been either lost or misfiled.
>
> . . .
>
> Judge Stoney authorized the warrant on July 6, 2010 and ... the bail amount of $10,000 was set in response to Ms. Acord's behavior toward the clerks on that day.

The Commission determined that this behavior violated rule 1.2 of the Code of Judicial Conduct, which states, "A judge should act at all times in a manner that promotes—and shall not undermine—public confidence in

the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." The Commission determined that a reprimand was the proper sanction. Our jurisdiction to review the Commission's proceedings is found in article eight, section thirteen of the Utah Constitution.

## STANDARD OF REVIEW

¶ 7 In judicial discipline matters, we will not overturn the Commission's findings of fact unless they are arbitrary, capricious, or plainly in error, but we reserve the right to draw inferences from the basic facts which may differ from the Commission's inferences and grant no deference to the Commission's ultimate decision as to what constitutes an appropriate sanction.[1]

This is because, although "the constitution vests ultimate responsibility with this court for the regularity of the proceedings, the sufficiency of the evidence, and the suitability of sanctions,"[2] the constitution also "clearly contemplate[s] that the Commission will have a significant role to play in gathering evidence of judicial misconduct, making determinations of fact, and recommending sanctions to the court."[3]

## ANALYSIS

I. THE RECORD EVIDENCE DOES NOT SUPPORT THE COMMISSION'S CONCLUSION THAT JUDGE STONEY ISSUED A WARRANT WITH IMPROPER INTENT

[3, 4] ¶ 8 The Judicial Conduct Commission must "prove its case against a Utah judge by a preponderance of the evidence."[4] Although the language in the docket notes does suggest that Judge Stoney reviewed

Ms. Acord's docket and issued a warrant for $10,000, the clerk who made that docket entry offered important clarifications. At the hearing, Ms. Mutchler explained that she did not know whether Judge Stoney was aware of Ms. Acord's telephone conversations with the clerks when the warrant issued. In fact, Ms. Mutchler never spoke with Judge Stoney about the warrant before issuing it. In light of Ms. Mutchler's testimony explaining the Justice Court procedures for issuing warrants and recording docket notes, Judge Stoney's testimony that the amount of the warrant was an unintentional error does not conflict with the record. In addition to the language in the docket notes, the Commission argues that Judge Stoney was clearly aware of Ms. Acord's telephone conversations because he mentioned them when Ms. Acord appeared in court. But uncontradicted testimony from Judge Stoney and from the bailiff explained that Judge Stoney was reading the docket notes, not speaking from memory. Additionally, evidence confirmed that setting an unreasonably high bail amount for Ms. Acord would have no retaliatory effect because the jail will not confine an individual for a traffic violation.

¶ 9 The Commission does not argue that Judge Stoney was inconsistent in his story and it made no finding specifically stating that it did not find Judge Stoney's testimony to be truthful or credible.[5] Generally, this court acts as a traditional appellate court, and it is "the lot of appellate judges to take their sustenance from the printed page" providing "ample cause to defer to the judgment of trial judges on matters that cannot be reliably extracted and examined from such a two-dimensional record."[6] Absent a finding as to credibility, however, it is possible that the Commission found Judge Stoney to be credible but forgetful. Furthermore,

---

1. *In re Worthen*, 926 P.2d 853, 865 (Utah 1996).

2. *Id.* at 863.

3. *Id.* at 864.

4. *In re Worthen*, 926 P.2d 853, 866 (Utah 1996).

5. *In re Worthen* cites the Connecticut Supreme Court for the proposition that, " '[w]e cannot assess the credibility of witnesses' " but must nevertheless " 'undertake a scrupulous and searching examination of the record to ascertain whether there was substantial evidence to support the council's factual findings.' " *Id.* at 864 (quoting *In re Zoarski*, 227 Conn. 784, 632 A.2d 1114, 1118 (1993)).

6. *S.B.D. v. State (State ex rel. Z.D.)*, 2006 UT 54, ¶ 24, 147 P.3d 401.

although an appellate court cannot generally view witnesses first-hand, Judge Stoney submitted his briefs pro se and appeared before this court at oral argument. Because Judge Stoney's version of events was consistent and uncontested, the Commission's determination that Judge Stoney "set [the amount of the bail] in response to Ms. Acord's behavior toward the clerks" is properly labeled an inference based on the facts rather than a finding of fact.[7] This court is free "to draw inferences from the basic facts which may differ from the Commission's inferences."[8] We do so in this case. The facts do not suggest that Judge Stoney issued a $10,000 warrant in response to Ms. Acord's rude remarks to the clerks. A preponderance of evidence therefore does not support the Commission's case against Judge Stoney.

## II. JUDGE STONEY'S MISTAKE DID NOT VIOLATE THE CODE OF JUDICIAL CONDUCT

¶ 10 We have explained that the Commission "must establish 'unjudicial conduct' by reference to the ethical canons contained in the Code of Judicial Conduct."[9] In this case, the Commission found a violation of rule 1.2 of the Code of Judicial Conduct: "A judge should act at all times in a manner that promotes—and shall not undermine—public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." "[M]ere errors of law, such as defects in the procedures followed and the imposition of excessive contempt sanctions, should ordinarily be dealt with through the appeals process."[10] Excessive errors might

"demonstrate the bad faith necessary to support a charge of willful misconduct or the type of disregard and indifference necessary to support a charge of prejudicial conduct."[11] But as Judge Stoney testified, the warrant system reveals no pattern of excessive bail orders. Judge Stoney's conduct does not rise to the level of a violation.

## III. PARTIES TO A JUDICIAL DISCIPLINE PROCEEDING ARE NOT REQUIRED TO MARSHAL EVIDENCE

¶ 11 Citing rule 24(a)(9) of the Utah Rules of Appellate Procedure, the Commission argues that this court should dismiss Judge Stoney's brief for failure to marshal the evidence supporting the Commission's order. We decline to do so. "The rules of appellate procedure apply to all matters before this court. However, not all matters before this court are appeals. Some cases reach us in a different posture. Judicial discipline ... in particular [is] essentially [an] original proceeding[ ] here."[12] This court can conduct further fact-finding, can draw new inferences from the facts, and must make an independent conclusion on the ultimate discipline appropriate. As such, the appellate rules of preservation are not mandatory although "[g]ood practice dictates that issues should be raised at the earliest possible moment in proceedings."[13] Similarly, we now clarify that parties need not marshal the evidence in a judicial discipline proceeding, although adequate presentation of the facts remains mandatory[14] and briefs that fail to address contested issues are unlikely to prevail.[15] Judge Stoney's brief adequately presented and addressed the facts.

---

7. *See* Black's Law Dictionary 847 (9th ed. 2009) (defining "inference" as "[a] conclusion reached by considering other facts and deducing a logical consequence from them"); *cf. Carter v. Labor Comm'n Appeals Bd.*, 2006 UT App 477, ¶ 16, 153 P.3d 763 ("[A]lthough the ALJ initially hears the testimony and observes the witnesses, the [Labor Commission Appeals] Board is the ultimate fact finder and may draw different inferences from, the evidence. Thus, the Board properly made different credibility determinations." (citation omitted)).

8. *In re Worthen*, 926 P.2d at 865.

9. *In re Worthen*, 926 P.2d 853, 872 (Utah 1996).

10. *Id.* at 874.

11. *Id.*

12. *In re Anderson*, 2004 UT 7, ¶ 46, 82 P.3d 1134.

13. *Id.* ¶ 48.

14. *See* Utah R. App. P. 24(a)(7), (9).

15. Briefs that "dump the burden of argument and research" on the court may be dismissed entirely. *Broderick v. Apartment Mgmt. Consultants, L.L.C.*, 2012 UT 17, ¶¶ 9, 18, 279 P.3d 391 (internal quotation marks omitted) (dismissing

## CONCLUSION

¶ 12 We decline to accept the Judicial Conduct Commission's order of discipline because the Commission has not shown that Judge Stoney violated the Code of Judicial Conduct.

Associate Chief Justice NEHRING authored the opinion of the Court, in which Chief Justice DURRANT, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

an appellee's brief that failed "to meaningfully address [appellants'] claim . . . or provide us with legal analysis addressing the points [appellants] raise").